UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JORDAN JONES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CREDIT ONE BANK, NA, )<br>)<br>Defendant. ) | Case No. 25-CV-0518-CVE-SH |

**OPINION AND ORDER**

Now before the Court is defendant Credit One Bank, N.A.'s motion to compel arbitration (Dkt. # 11). Defendant Credit One seeks to enforce the terms of three card member agreements that it states plaintiff agreed to by activating and using the three credit cards. Defendant argues that the agreements require binding arbitration for all of plaintiff's disputes, and it asks the Court to compel arbitration and stay this case pending the outcome of the arbitration proceedings. Plaintiff, proceeding pro se, responds that the dispute should not be submitted to arbitration because he disputes the existence of a valid contract and because even if a valid contract did exist, the arbitration clause would be unenforceable based on procedural and substantive unconscionability. Dkt. # 12.

I.

In 2021, plaintiff responded to a credit card solicitation offer sent to him by defendant, which offered a credit card account. Dkt. # 11, at 2-3. Based on plaintiff's response, defendant sent plaintiff a credit card and, in the same envelope, enclosed a paper copy of the credit card agreement. Id. at 3. That same month, plaintiff proceeded to activate and make purchases with that card. Id. at 3. In 2022 and 2023, plaintiff applied for two more credit cards, which defendant sent to him, again enclosing with each card copies of the card agreements. Id. at 3-4; see also Dkt. # 11-1

(attaching as exhibits copies of the card agreement enclosed with each of the three credit cards). Plaintiff again activated and made purchases using each of the cards, in April 2022 and July 2023, respectively. Dkt. # 11, at 3-4. The card agreements, which defendant asserts were sent to plaintiff enclosed with each of the cards he activated and then used, include provisions concerning arbitration. Id. at 2-5. On the second page of the card agreement, it states that the agreement includes an arbitration provision along with brief instructions on how to reject the agreement. Id. at 4-5 (quoting Dkt. # 11-1, at 10, 24, 37). The arbitration section begins with bold, capitalized text, which reads: "**PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS**." Id. at 5 (quoting Dkt. # 11-1, at 14, 28, 41). In the section titled "covered claims," the agreement states that "[c]laims subject to arbitration include, but are not limited to, controversies or disputes arising from or relating in any way" the recipient's account, contract or regulatory claims, and past or future claims. Id. at 5 (quoting Dkt. # 11-1, at 14, 28, 41). Finally, the section concludes with instructions on how to reject the agreement to arbitrate, requiring "a written notice of rejection within 45 days after [the agreement] was first provided," sent in a specific format to a given address. Id. at 6 (quoting Dkt. # 11-1, at 16, 28, 43). Defendant states it received no written communication from plaintiff at the designated address or any other address as to any of the three card agreements. Id.

Plaintiff filed this action, seeking relief under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, et seq., for defendant's alleged use of an autodialer to make over nine-hundred phone calls and leave ten or more messages per day between January and June 2025, without his consent. Dkt. # 12, at 2. Defendant does not dispute that during this period, it was calling plaintiff "in an attempt to collect the debts owed by the [a]ccounts." Dkt. # 11, at 6; see also Dkt. # 14, at 2 n.2. Plaintiff alleges that during that time, he was recovering from a serious accident,

2

and that defendant's "repeated harassment" caused him significant emotional distress, for which he brings a claim of intentional infliction of emotional distress under Oklahoma common law. Dkt. # 12, at 2.

Defendant now moves to compel arbitration. Dkt. # 11. It argues that plaintiff accepted the card agreements, which he received with the cards he activated and consented to by activating the cards. Id. at 4-6. Defendant also argues that the card agreements contain valid arbitration provisions, which plaintiff consented to, and which encompass the claims plaintiff brings here. Id. Defendant states that it "sought [p]laintiff's agreement to arbitrate the claims pursuant to the [c]ard [a]greement, but [p]laintiff refused to agree." Id. at 6. It seeks a stay of this action pending arbitration. Id. at 11-12. Plaintiff opposed the motion, arguing that defendant has failed to meet its burden of showing that the contract between defendant and him was valid. Dkt. # 12, at 1. He supports this by asserting that defendant has failed to show that plaintiff received the agreement, agreed to be bound by the agreement, signed the card agreement, or received notice of an arbitration provision. Id. at 1-2. Plaintiff further argues that "[e]ven if the Court finds that an agreement existed, the [arbitration] clause is unenforceable." Id. at 2. Plaintiff argues that the arbitration provision is (1) procedurally unconscionable, as plaintiff did not knowingly agree to the terms, and (2) substantively unconscionable, as plaintiff did not meaningfully negotiate the limitation of plaintiff's statutory rights. Id. Finally, plaintiff asserts that a judicial determination is required before arbitration can be compelled. Id. Defendant replied, asserting that the valid, binding card agreements provide unambiguous notice of the arbitration provisions, which he received and assented to once he activated the card and did not reject the terms. Dkt. # 14, at 2-5. Defendant also argues that plaintiff's claims fall within the scope of the arbitration provisions. Id. at 5-6. Defendant

asserts that plaintiff also offers no evidence of unconscionability and finally that public policy favors arbitration. Id. at 8-9.

## II.

The Federal Arbitration Act (FAA), which encompasses a strong public policy in favor of arbitration, mandates that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681-82 (2010); Vaden v. Discover Bank, 556 U.S. 49, 58 (2009). The FAA "requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation." Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1514 (10th Cir. 1995). Agreements that require arbitration of statutory claims are generally enforceable. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); Southland Corp. v. Keating, 465 U.S. 1, 11 (1984). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Jacks v. CMH Homes, Inc., 856 F.3d 1301, 1305 (10th Cir. 2017). "Generally, courts 'should apply ordinary state-law principles that govern the formation of contracts' to determine whether a party has agreed to arbitrate a dispute." Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475-76 (10th Cir. 2006). However, the consideration of state law is limited to principles of contract law concerning the enforceability of contracts in general, and state law cannot displace the strong federal policy in favor of arbitration of disputes. Nitro-Lift Technologies, LLC v. Howard, 568 U.S. 17, 20-21 (2012); Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009).

A motion to compel arbitration calls for a two-step inquiry concerning the arbitrability of the

dispute: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the scope of that agreement. AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). "The question whether the parties have submitted a particular dispute to arbitration . . . is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T, 475 U.S. at 649). The Tenth Circuit has stated that the procedure for reviewing a motion to compel arbitration when there are no material disputes of fact "can look a lot like summary judgment." Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014). "When it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." Id.

### III.

The Court first examines whether there was a valid arbitration agreement. As federal courts should apply ordinary state-law principles that govern the formation of contracts in cases such as these, the Court applies Nevada law, the parties' choice of law under the agreement, in reaching its determination as to the first question. Hardin, 465 F.3d at 475-76; see Dkt. # 11, at 8-9 (citing Dkt. # 11-1, at 14, 28, 41 ("This agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the 'FAA'), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the laws of the State of Nevada."). Under Nevada law, an enforceable contract requires "an offer and acceptance, meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1264, 1257 (Nev. 2005) (citing Keddie v. Beneficial Ins., Inc., 580 P.2d 955, 956 (Nev. 1978) (Batjer, C.J., concurring)). A court

need not consider the subjective intention of the parties but must instead to examine "the more objective inquiry into the meaning conveyed by the words they selected to define the scope of the agreement." DeChambeau v. Balkenbush, 431 P.3d 359, 362 (Nev. App. Ct. 2018) (citing Hotel Riviera, Inc. v. Torres, 632 P.2d 1155, 1157 (Nev. 1981)). With respect to credit card agreements, the Nevada legislature has provided for the following: "An issuer shall provide the cardholder with the terms and conditions that govern the use of the credit card, in writing, before or at the time of the receipt of the credit card. A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card." NEV. REV. STAT. § 97A.140 (2025); see also Merritt v. Credit One Bank, N.A., No. 220-CV-1335-JCM-VCF, 2020 WL 5775749, at *1 (D. Nev. Sep. 28, 2020); Pacha v. Credit One Bank, N.A., No. No. 20-CV-148-KJD-BNW, 2020 WL 6363840, at *2 (D. Nev. Oct. 29, 2020). Plaintiff disputes that he ever signed an agreement with defendant, Dkt. # 12, at 1; however, Nevada law does not require a signature for a card agreement to be valid. Plaintiff does not dispute that he received three credit cards from Credit One Bank, Dkt. # 12, which means that plaintiff received the card agreement contained in the same envelope "at the time of receipt of the credit card," Dkt. # 11, at 2-4. Plaintiff also does not dispute that he activated and made purchases using each of the three cards sent to him. Therefore, plaintiff "accepted the written terms and conditions provided" to him by defendant. Dkt. # 11, at 3-4. Based on plaintiff's objective manifestation of assent to the terms provided—activating and making purchases with the cards—plaintiff entered into three valid contractual agreements with defendant.

Additionally, the card agreement contains a valid arbitration provision. In bold, capitalized, and plainly worded text that appears in multiple places, the agreements state that they bind both

parties to arbitrate disputes. See, e.g., Dkt. # 11-1, at 10, 14-16; id. at 24, 28-30; id. at 37, 41-43. The agreements also offered plaintiff a means of rejecting that aspect of the agreements, of which plaintiff did not avail himself. See id. at 10, 16; id. at 24, 30; id. at 37, 43. Per the agreements, plaintiff had forty-five days after the receipt of the agreements to give written notice of his rejection of the arbitration provisions, which must have been sent to a given address. Id. at 16, 30, 43. As defendant never received written notice of plaintiff's rejection or rejections, plaintiff agreed to the arbitration terms, as stated, in the three agreements. Dkt. # 11, at 6.

Plaintiff raises two arguments as to why, even though an agreement existed, the arbitration provisions are unenforceable. Dkt. # 12, at 2. First, plaintiff claims that the arbitration clause is procedurally unconscionable because "[p]laintiff never received, reviewed, or knowingly agreed to arbitration terms." Id. As defendant points out, under Nevada law, procedural unconscionability requires a showing that "a party lacks a meaningful opportunity to agree to the clause's terms." D.R. Horton, Inc. v. Green, 96 P.3d 1159, 1162 (Nev. 2004); see also Dkt. # 14, at 7 (citing Giles v. GE Money Bank, No. 11-CV-434-JCM-CWH, 2011 WL 4501099, at *4 (D. Nev. Sep. 27, 2011) (quoting D.R. Horton, 96 P.3d at 1162)). This usually entails "the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." D.R. Horton, 96 P.3d at 1163; see also Dkt. # 14, at 7 (citing Giles, 2011 WL 4501099, at *4 (quoting D.R. Horton, 96 P.3d at 1162)). As discussed above, notice as to the arbitration provisions of the agreement are given in bolded, capitalized, and plainly worded text; the repletely described arbitration provision neither misleads nor fails to inform a reasonable person of the breadth and scope of the disputes to which arbitration applies. See supra; Dkt. # 11-1, at 10, 14-16, 24, 28-30, 37, 41-43. Moreover, plaintiff has offered no basis on which the Court could

conclude that the provision is procedurally unconscionable beyond the ten-word sentence in which he states that he did not receive, review, or knowingly agree to arbitration. Plaintiff had a meaningful opportunity in which to review the terms prior to agreeing to the contract (between receipt of the envelopes containing the card and the agreement terms, and activating and using each card), as well as an opportunity to reject the arbitration provision (in the forty-five day period after which he received the envelopes to send, in writing, his rejection of that provision to the address provided). Plaintiff's failure to review those terms of his own accord does not amount to procedural unconscionability.

Plaintiff also argues that the arbitration clauses are substantively unconscionable because the clauses "limit [p]laintiff's federal statutory rights and [were] not meaningfully negotiated." Dkt. # 12, at 2. Substantive unconscionability, under Nevada law, requires a showing of "one-sidedness of the contract terms." D.R. Horton, 96 P.3d at 1162-63; see also Dkt. # 14, at 7 (citing Giles, 2011 WL 4501099, at *4 (quoting D.R. Horton, 96 P.3d at 1162-63)). As the Ninth Circuit puts it, "[w]here an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'" Ting v. AT&T, 319 0F.3d 1126, 1149 (9th Cir. 2003). In certain instances, "manifestly one-sided" provisions—such as banning class actions, requiring fee-splitting for the arbitrator's fees, or including liquidated damages provisions to penalize forgoing arbitration—have been found to be substantively unconscionable. Id.; D.R. Horton, 96 P.3d at 1165. But such provisions must be "so one-sided as to oppress or unfairly surprise an innocent party." Bill Stremmel Motors, Inc. v. IDS Leasing Corp., 514 P.2d 654, 657 (Nev. 1973); see also Guerra v. Hertz Corp., 504 F. Supp. 2d 1014, 1021 (D. Nev. 2007). Moreover, not all one-sided contracts are inherently unconscionable. Tompkins v. 23andMe, Inc., 850 F.3d 1016, 1030-31 (9th

Cir. 2016). The simple fact that plaintiff must pursue claims via arbitration, which may foreclose certain of his claims under the TCPA, does not, unto itself, rise to the level of manifest one-sidedness that would be required for a finding of unconscionability. Plaintiff offers nothing to substantiate his assertion that the arbitration provision is one-sided. As the Court views it, the provision itself in no way penalizes plaintiff through its overwhelming one-sidedness, and the remedy offers at least the "modicum of bilaterality" necessary to overcome the low bar of unconscionability. Plaintiff fails to show that the arbitration provisions at issue are unenforceable. The Court finds that the parties entered into three card agreements, one for each of plaintiff's three credit cards, all of which contain valid arbitration agreements.

The Court now examines whether the dispute falls within the scope of the agreement. The agreement's arbitration agreement encompasses "any controversies or disputes arising from or in any way relating to [plaintiff's] [a]ccount." Dkt. # 11-1, at 14, 28, 41. The Ninth Circuit, the law of which applies here through the application of Nevada law, has state that comprehensive arbitration provisions—such as those that incorporate "any dispute," "all claims," or "disputes arising out of"—should be broadly interpreted in favor of arbitration. See, e.g., Ferguson v. Corinthian Colleges, Inc., 733 F.3d 928, 938 (9th Cir. 2013) (contrasting arbitration provisions that encompass disputes "arising under this Agreement" with "'any disputes,' 'all claims,' and disputes 'arising from . . .'"); Camping Constr. Co. v. Dist. Council of Iron Workers, 915 F.2d 1333, 1338-39 (9th Cir. 1990); Gitlitz v. Bitrate Prods., No. 24-CV-1081-JAD-DJA, 2024 WL 46467671, at *3 (D. Nev. Oct. 31, 2024). The more meaningful metric is whether the "factual allegations . . . 'touch matters' covered by the contract containing the arbitration clause," with the caveat that "all doubts are to be resolved in favor of arbitrability." Simula, Inc. v. Autoliv, Inc., 174 F.3d 716, 721 (9th Cir. 1999)

(citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.13 (1985)); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Although plaintiff's claims arise out of calls made by defendant to plaintiff's personal cell phone, Dkt. # 1, at 1, defendant asserts that those calls were made "in an attempt to collect the debts owed on the [three] [a]ccounts," Dkt. # 11, at 6. Disputes related to the number and frequency of phone calls as to plaintiff's nonpayment on his three accounts, each of which is governed by the card agreements, are encompassed by "any controvers[y] or disputes arising from or in any way relating to [plaintiff's] [a]ccount." See Dkt. # 11-1, at 14, 28, 41. The Court, resolving all doubts in favor of arbitrability, finds that plaintiff's claim under the TCPA and the supplemental claim for intentional infliction of emotional distress under Oklahoma law both "'touch matters' covered by the contract containing the arbitration clause," and therefore fall within the scope of the arbitration provisions. See Simula, 174 F.3d at 721. With both steps of the inquiry as to arbitrability met, the Court finds that defendant's motion to compel arbitration should be granted.

## IV.

Having determined that the motion to compel arbitration should be granted, the Court addresses defendant's motion to stay proceedings pending arbitration. Under § 3 of the FAA, once the Court determines that the issue involved in the suit is referable to arbitration per the parties' agreement, it "shall on application of one of the parties stay the trial of the action until such

arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Therefore, the Court grants defendant's motion to stay proceedings.

**IT IS THEREFORE ORDERED** that defendant's motion to compel arbitration and to stay proceedings (Dkt. # 11) is **granted**.

**IT IS FURTHER ORDERED** that, pursuant to LCvR 41.1, **this case is administratively closed** pending either an order of the Court reopening the action, or unless this case is dismissed with prejudice by stipulation of the parties.

**IT IS FURTHER ORDERED** that the parties shall file a notice in this Court within 15 days of the completion of arbitration.

**DATED** this 5th day of March, 2026.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE